UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PARADIGM ELIZABETH, LLC,<br><br>                        Appellant,<br><br>                        v.<br><br>EMPIRE TFI JERSEY HOLDINGS, LLC<br><br>                        Appellee. | Civ. No. 15-5744 (KM)<br><br>(Bankr. Case no. 14-24901)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

      The debtor, Paradigm Elizabeth, LLC ("Paradigm"), appeals an order entered by Judge Vincent F. Papalia of the United States Bankruptcy Court for the District of New Jersey. (ECF No. 1-2) Judge Papalia's order granted the motion of Empire TFI Jersey Holdings, LLC ("Empire") to dismiss Paradigm's Chapter 11 case with prejudice. For the reasons set forth below, the bankruptcy court's order is AFFIRMED.

**I.    BACKGROUND**

      Paradigm is a special purpose vehicle created to take title to two tracts of land, lots G7 and G8.[1] (Kushner Cert. ¶ 25) In 2010, the City of Elizabeth

---

[1]    This entry and other docket entries for the bankruptcy case and for adversary proceedings thereunder are available through the Bankruptcy Court's ECF filing system. Citations to the dockets of this court, the bankruptcy court, and adversarial action are abbreviated as "ECF No." and "Bnkr. Dkt. No.", and "Adv. Dkt. No.", respectively. Citations to specific documents are abbreviated as follows:

    "Kushner Cert." – Certification of David Kushner in Opposition to Motion to Dismiss the Case and for Relief From the Automatic Stay (Bnkr. Dkt. no. 25)

    "Bnkr. Hr'g" – Transcript of June 25, 2015 Hearing before Honorable Vincent F. Papalia, United States Bankruptcy Court Judge (ECF no. 6-2)

1

conducted a tax sale for delinquent taxes on G7 and G8. Tax sale certificates ("TSCs") for G7 and G8 were purchased; the G7 TSC was eventually assigned to Osprey Investments, LLC ("Osprey"), and the G8 TSC to Empire. (*Id.* ¶¶ 24, 32, 37)

On July 17, 2014, Empire obtained a final judgment of foreclosure on G8. (Bnkr. Hr'g 36:19-21) Unaware that Empire had taken title to G8, Paradigm filed for Chapter 11 bankruptcy on July 21, 2014, hoping to stay the G7 and G8 tax sales. (Kushner Cert. ¶¶ 51-52) Paradigm later amended its petition and removed G8 as an asset of the estate. (Bnkr. Dkt. No. 27)

The fight for G7, however, proceeded in the bankruptcy court. In September 2014, Osprey asked for relief from the automatic stay after Paradigm fell behind on its taxes for lot G7. (Bnkr. Dkt. no. 24) The court authorized $45k in debtor-in-possession ("DIP") financing, which was used to pay off the back taxes, and Osprey withdrew its motion. (Bnkr. Dkt. no. 38; Bnkr. Hr'g 38:15-22) The court allowed an additional $250k in DIP financing in November 2014 to allow Paradigm to conduct an auction for the G7 property. (Bnkr. Dkt. nos. 73-75) Paradigm received two bids, but neither was sufficient to cover Osprey's lien. (Bonchi Cert. ¶¶ 6, 8)

In December 2014, Paradigm filed an adversarial action against Empire (which, as noted above, had obtained G8 in foreclosure). Paradigm's action alleged fraudulent transfer and sought to recover G8. (Adv. Dkt. no. 1)

In January 2015, Paradigm and Osprey entered into a consent order in which Paradigm was allowed to obtain $1.5 million in DIP financing to redeem the Osprey's TSC on G7. If, however, Paradigm failed to do by March 31, 2015, Osprey would be allowed to obtain a final judgment of foreclosure on G7. (Bnkr. Dkt. nos. 92, 95) In February, 2015, Paradigm again fell behind on

---

"Bonchi Cert." – Statement of Counsel of Osprey Investments, LLC as Assignee of FNA Jersey Lien Services, LCC (Bnkr. Dkt. no. 81-1)

2

its G7 property taxes. Osprey filed a motion to dismiss on that basis on March 2, 2015. (Bnkr. Dkt. no. 100) About two weeks later, Paradigm represented to the court that it had sent the City of Elizabeth a check for the delinquent taxes. (Bnkr. Dkt. no. 105) Osprey, fearing that the check might bounce, requested that its motion be continued rather than dismissed, and the court agreed. (Bnkr. Hr'g 41:13-25). Paradigm later issued a stop-payment order on the check. (*Id.*) The March 31st deadline came and went. Osprey obtained a final judgment of foreclosure on G7 in May 2015. (*Id.* 42:1-17)

In June 2015, Empire moved to dismiss the adversary proceeding and the bankruptcy case itself. (Adv. Dkt. 34) Ruling from the bench later that month, the bankruptcy court granted Empire's motion on three independent grounds under 11 U.S.C. § 1112.[2]

First, under Section 1112(b)(4)(A), Judge Papalia found that the loss of G7 constituted a substantial loss to the estate and there was no reasonable likelihood that Paradigm could be rehabilitated within a reasonable time. Specifically, the court ruled that Paradigm was a single asset real estate business with "no cash flow and no sources of funds," and that the loss of G7 therefore "clearly constitute[d] a substantial diminution in the value of the estate assets." (Bnkr. Hr'g 44:20-45:9) The court also ruled that there was no reasonable likelihood of rehabilitation because the "quick sale of Lot G7" was

---

[2]  11 U.S.C. § 1112 provides:

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

(4) For purposes of this subsection, the term "cause" includes—

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; . . .

(E) failure to comply with an order of the court; . . .

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; . . . .

3

the "l[i]nchpin of its proposed reorganization." The only other asset was G8, and "there is no way to establish the feasibility of a plan which is to be funded solely from the possibility" of recovering G8 in the adversary proceeding. (Bnkr. Hr'g 46:12-15; 47:5-10)

Second, Judge Papalia added that "it couldn't be clearer in this case that the debtor had the ability to pay the taxes and intentionally failed to do so". (Bnkr. Hr'g 48:12-25) That failure, even taken alone, constituted sufficient cause in the bankruptcy judge's view to dismiss the case under Section 1112(b)(4)(I).

Third, Judge Papalia found that Paradigm failed to comply with the "spirit" of the court's orders because it never made good on "representations that were made that kept this case from being dismissed at the beginning" (*e.g.*, that it would use DIP financing to pay G7's taxes and redeem Osprey's TSC). (Bnkr. Hr'g. 49:1-12) Under Section 1112(b)(4)(E), this failure, too, independently warranted dismissal.

After the court's ruling, Paradigm—for the first time—requested that the bankruptcy court convert the case to a Chapter 7 bankruptcy rather than dismiss it outright. Judge Papalia responded that he was "just not prepared to rule on that" because "nobody suggested that to me until now." Instead, he invited Paradigm to file a formal motion to convert the case. (Bnkr. Hr'g 50:8-51:2). Counsel for Paradigm, in turn, stated that he would "file a motion for reconsideration to suggest that it be a conversion instead of a dismissal." (Bnkr. Hr'g 51:3-7) But he never did. Instead, Paradigm filed this appeal.

## II.   DISCUSSION

### A.   Standard of Review

This District Court has jurisdiction to hear appeals of final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In general, a district court reviews "'the bankruptcy court's legal determinations

4

*de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *In re American Pad & Paper Co.,* 478 F.3d 546, 551 (3d Cir.2007) (quoting *In re United Healthcare Sys., Inc.,* 396 F.3d 247, 249 (3d Cir.2005) (quotation and citation omitted)). A district must separately analyze mixed findings of fact and conclusions of law, and appropriately apply the applicable standards—clearly erroneous or *de novo*—to each component. *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992) (citing *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102–03 (3d Cir.1981)).

More specifically, a bankruptcy court's decision to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b) is reviewed for abuse of discretion. *In re American Capital Equipment, LLC,* 688 F.3d 145, 161 (3d Cir. 2012); *In re SGL Carbon Corp.,* 200 F.3d 154, 159 (3d Cir. 1999). Of course, that discretion is channeled; a court does not possess the "discretion" to commit legal error or make clearly erroneous factual findings.

> Mindful that "an abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact," *ACLU v. Black Horse Pike Reg'l Bd. of Ed.,* 84 F.3d 1471, 1476 (3d Cir. 1996) (internal quotations omitted), we review the findings of fact leading to the decision for clear error and exercise plenary review over the court's conclusions of law. See *First Jersey Nat'l Bank v. Brown (In re Brown),* 951 F.2d 564, 567 (3d Cir. 1991).

*In re SGL,* 200 F.3d at 159 (review of dismissal of Chapter 11 petition).

### B. Analysis

Paradigm argues that the bankruptcy court's decision to dismiss the Chapter 11 petition is infected by five errors: (1) Empire lacked standing to seek dismissal; (2) there is a reasonable likelihood of rehabilitation based solely on Paradigm's fraudulent conveyance claim; (3) the court failed to consider whether conversion, rather than dismissal, was in the best interests of the creditors; (4) the court should have held an evidentiary hearing or allowed

Paradigm to submit an appraisal of G8 before it dismissed the case; and (5) the court improperly dismissed the case based on the delay and costs Empire would have incurred in defending the fraudulent conveyance action through any potential appeals. Each of these arguments is meritless.

### 1. Standing

Paradigm first contends that Empire lacked standing to seek dismissal of the Chapter 11 case because it was not a creditor. Standing under 11 U.S.C. § 1109(b), however, is not limited to creditors.[3] Section 1109(b) provides that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." Although "[t]he code does include a definition of a party in interest; it is clear . . . that the term 'party in interest' is not limited by the small list of examples in § 1109(b)." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (citing *Collier on Bankruptcy* for the proposition that section 1109(b) "must be construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard") Thus, "courts must determine on case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Id.*

There is no doubt that Empire had a stake in the bankruptcy proceeding sufficient to "require representation," *id.*, and confer standing. Empire holds title to lot G8, which Paradigm first listed as part of the bankruptcy estate and later sought to recover *via* an action for fraudulent conveyance. If Paradigm had prevailed in the adversary proceeding, G8 would have reverted to the bankruptcy estate, to Empire's obvious detriment. Empire

---

[3] Paradigm did not raise the issue of standing in the court below. But standing is a legal issue, reviewed *de novo*, which goes to the jurisdiction of district and bankruptcy courts. It therefore cannot be waived or left unaddressed by the Court. *See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 15-58 (D.N.J. 2005).

6

therefore had a strong, protectable interest in the bankruptcy case. *In re Action Roofing & Supply Co.*, 137 B.R. 217, 218-19 (S.D. Tex. 1991) (ruling that a defendant in preference action had standing to seek dismissal of a Chapter 11 case). Empire therefore had standing under Section 11109(b) to seek dismissal of the Chapter 11 case.[4]

### 2. Reasonable Likelihood of Rehabilitation

Paradigm next argues that the bankruptcy court should have ruled that there was a reasonable likelihood of rehabilitation within a reasonable time, based solely on the possibility that Paradigm might recover lot G8 as a fraudulent conveyance. That argument, however, was thoroughly considered and rejected by Judge Papalia, who found that Paradigm had no business, cash flow, or funds following the loss of G7, and that the fraudulent conveyance claim—the only remaining asset—could take years to resolve. *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) ("There must be a 'reasonable possibility of a successful reorganization within a reasonable time.'") (citing *United Savings Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365 (1988)). These problems aside, the court also found that Paradigm's "efforts to date have not indicated any ability to reorganize"; indeed, "when it intentionally stopped payment on a check [for delinquent taxes] . . . the debtor further demonstrated that its real intent was to continue to proceed with the case

---

[4] Even if Empire lacked standing, the bankruptcy court could have dismissed the case *sua sponte*. *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce implement court orders or rules, or to prevent abuse of process."). In granting Empire's motion to dismiss, the bankruptcy court ruled that Paradigm failed to comply with the "spirit" of court orders—an independent ground for dismissal under 11 U.S.C. § 1112(b)(4)(E)—and reneged on the "representations that were made that kept this case from being dismissed at the beginning." (Bnkr. Hr'g 49:1-12) Trifling with orders of the court is grounds for *sua sponte* action.

7

without any outlay of funds of its own, but rather at the expense of the secured creditor." (Bnk. Hr'g 44:20-48:11) [5]

After reviewing the bankruptcy court's decision and the record as whole, I cannot find any abuse of discretion, or any clearly erroneous findings of fact or incorrect rulings of law as to subsidiary issues. In short, I find that the bankruptcy court did not abuse its discretion in dismissing the bankruptcy case under Section 1112(b)(4)(A).

### 3. Conversion

Paradigm also faults the court for failing to consider whether conversion was in the best interests of the creditors. On request of a party, "after notice and a hearing," a court may convert or dismiss a case—whichever is in the best interests of the creditors. 11 U.S.C. § 1112(b)(1). Here, there was no notice of, or a hearing on, the issue of conversion. That, however, was for the very good reason that Paradigm requested that the court consider converting its case only *after* the case had been dismissed. What is more, the court offered Paradigm the opportunity to file a formal motion, in which it could provide "a little bit better info on the creditors" and argue that conversion was in their best interests. (Bnkr. Hr'g 50:18-51:21) [6] Paradigm, after saying it would file such a motion, failed to do so.

---

[5]  Paradigm argues that the court erred in dismissing the case because the adversary proceeding was slated to go to trial three months after the motion to dismiss hearing. But Paradigm's bankruptcy petition was filed in July 2014, and, as the court noted, "the debtor has provided no indication that a sale of G7 is . . . any closer today than it was when the case was commenced almost a year ago". (Bnkr. Hr'g 46:1-11) In fact, Paradigm had lost G7—its only substantive asset and the "linchpin" of any concrete reorganization plan—by June 2015 because it failed to pay post-petition taxes. That would have been just as true in September 2015 as it was in June 2015, and still sufficient grounds for dismissal with cause. Under the circumstances, I find that the bankruptcy court did not abuse its discretion in dismissing the case before the fraudulent conveyance trial, based on the speculative possibility of Paradigm prevailing (and, presumably, reforming its behavior thereafter).

[6]  At the hearing on the motion to dismiss, court expressed skepticism that Paradigm had any bona fide creditors. (Bnkr. Hr'g 26:3-29:23). To the extent those

8

Paradigm has waived the right to complain that its case should have been converted before this Court. *See Matter of Am. Biomaterials Corp.*, 954 F.2d 919, 927-28 (3d Cir. 1992) (noting the general rule that parties waive arguments not raised in bankruptcy courts "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record"). I cannot find that the bankruptcy court abused its discretion in failing to consider an argument that was never properly presented to it.

### 4. Evidentiary Hearing and Appraisal

Paradigm contends that Judge Papalia should have conducted an evidentiary hearing in which it could have demonstrated the value of G8 to the estate, explain why it lost G7, and propose a plan of reorganization. It similarly faults the court for dismissing the case before it could obtain an appraisal of G8. The bankruptcy court had no obligation to allow either, however, and did not abuse its discretion when it failed to order an evidentiary hearing or permit an appraisal.

For starters, Paradigm never requested an evidentiary hearing. The bankruptcy court did not abuse its discretion in failing to order a hearing no one asked for.

Even when faced by a proper request, a "[c]ourt may decline to conduct an evidentiary hearing where the alleged facts even if true, would not change the outcome." *In re Mazzocone*, 180 B.R. 782, 786 (E.D. Pa. 1995) (quoting *In re Elmwood Dev. Co.*, 964 F.2d 508, 512 (5th Cir. 1992)). This is such a case. The bankruptcy court dismissed the bankruptcy case for cause because Paradigm (1) had lost G7 and there was no reasonable likelihood that the estate could be rehabilitated within a reasonable time based solely on the

---

creditors exist and, as Paradigm suggests, they believe that dismissal of the bankruptcy case gave Empire a windfall at their expense, those concerns could have been addressed in the motion for reconsideration that the court requested and Paradigm stated it would file.

9

possibility that G8 might be recovered in the fraudulent conveyance action; (2) failed to pay post-petition taxes; and (3) failed to comply with court orders. Each of these reasons is an independent and adequate ground for dismissal. None of these reasons would have been affected by an evidentiary hearing concerning G8. I therefore find that the court did not abuse its discretion in failing to provide an evidentiary hearing.

While Paradigm did request permission to retain an appraiser (nine days before the motion to dismiss hearing (Bnkr. Dkt. 118)), Paradigm offers no authority that suggests a bankruptcy court must consider an appraisal before it may dismiss a petition for cause under Section 1112(b)(4). And, as noted above, the court's decision to dismiss the case rested on three grounds that would that would have been unaffected had Paradigm obtained an appraisal. On this score, too, I find that the court did not abuse its discretion.

### 5. Costs and Delay to Empire

Paradigm argues that the court erred in dismissing its case because of the delay and costs Empire might have incurred during the pendency and potential appeals of the fraudulent conveyance adversary proceeding. It is true that the court (reasonably, in my view) expressed both concerns in its decision. (*See* Bnkr. Hr'g 49:13-20 (finding that Paradigm's "plain intent . . . is to proceed with the fraudulent transfer action completely at the risk and expense of the secured lien holder without any outlay of any funds by the debtor"); 48:5-11 (finding that Paradigm "has no cash flow and the potential . . . plan based on successful litigation that is subject to dispute and a split of authorities and is likely to be appeal for years is simply not enough to avoid dismissal.") However, the three grounds on which the court expressly dismissed the case are clear. And even assuming that one of those grounds— the court's Section 1112(b)(4)(A) analysis—incorrectly rested those two impermissible considerations, that would leave two other independent grounds for dismissal.

### III.    CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

Dated: November 3, 2016

                                                                          _____
                                                                          **KEVIN MCNULTY**
                                                                          **United States District Judge**